IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ALICE D. HILL, *on behalf of herself and all similarly situated individuals*, <br><br> Plaintiff, <br><br> vs. <br><br> CHADWICK, WASHINGTON, MORIARTY, ELMORE & BUNN, P.C., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 1:12-cv-671-JCC-JFA <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Chadwick, Washington, Moriarty, Elmore & Bunn, P.C. ("Chadwick Washington" or "Defendant"), by counsel, respectfully submits this Memorandum in Support of its Motion to Dismiss Plaintiffs' Class Action Complaint for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6).

### Preliminary Statement

The Class Action Complaint alleges claims arising under the Fair Debt Collections Act ("FDCPA"), 15 U.S.C. § 1692 et seq.  Plaintiff alleges that Defendant filed demand letters, lawsuits, and garnishment actions that contained false and misleading misrepresentations in violation of various provisions of the FDCPA.  The Complaint, however, fails to state a claim because it (1) is not pleaded with adequate factual support and rests on nothing more than labels and conclusions, (2) asserts claims under statutory provisions (15 U.S.C. §§ 1692(f)(1) and 1692e) that are mutually exclusive when based on the same conduct, (3) fails to allege acts that constitute the type of harassing, oppressive, or abusive misconduct to establish a claim under §

1692d(1), and (4) asserts claims that Defendant falsely claimed an entitlement to attorneys' fees, excessive late fees, excessive interest, and garnishment costs even though Defendant was entitled to recover those costs either by contract or expressly under Virginia law.  For these reasons, as well as others stated in this memorandum, Counts I, II, and III of Plaintiff's Class Action Complaint should be dismissed with prejudice.

<u>**Statement of Facts**</u>

1.   **The Reston Association's Covenants and Resolution.**

Alice D. Hill ("Ms. Hill" or "Plaintiff") is a property owner and member of the Reston Association ("Reston Association" or "Association").  The Reston Association is a property owners' Association as defined by the Virginia Property Owners' Association Act, Title 55, Chapter 26, of the Virginia Code.  (<u>See</u> Am. Bylaws of Reston Assoc. Art. I § 1.2; Def.'s Ex. 1.) As a member of the Reston Association, Ms. Hill was bound by certain covenants recorded in the Fairfax County land records that required her to pay property assessments to the Association on an annual basis.  (<u>See</u> The First Amendment to the Deed of Amendment to the Deeds of Dedication of Reston (hereinafter "Covenants"), Art. V, § V.5; Def.'s Ex. 2 at 22.)  The Covenants further provide that:

> The Association may charge an owner of any portion of the Property: (i) a late fee on an overdue Assessment not to exceed ten percent of the Assessment; (ii) the costs, including attorney's fees and court costs, for collection of Assessments and of enforcing any of the provisions of this Deed; and (iii) interest on overdue sums, up to the maximum rate permitted by law.  Any such charges shall be a personal obligation of the owner of any portion of the Property and shall be added to and become a part of the lienable Assessment on the Lot of portion of the Property.  In addition, such charges may be awarded by a court as part of its judgment in any proceeding in law or equity.

(<u>Id.</u> at 24.)

An Assessment & Finance Resolution ("Resolution") adopted by the Association on June 22, 2006, provides the annual assessment rate and the procedures for collecting the assessment. (See Compl. Ex. C.)  Under the Resolution, any late assessment would "automatically incur a late payment charge . . . of ten percent (10%) of the Annual Assessment installment amount." (Id.; Resolution 4(a).)  The Resolution also provides that "[a]ll past due account balances will incur finance charges at an annual rate of twelve percent (12%) . . . ."  (Id.)  After an account has remained delinquent for a period greater than ten days, under the Resolution's terms, the Association "will proceed with collection."  (Id. at 4; Resolution 6(c)(i).)

To collect delinquent assessments, the Resolution provides that the "Reston Association may record a memorandum of lien and/or seek a judgment on the Owner's personal obligation to pay the Assessment, Maintenance Assessment, and other charges."  (Id.; Resolution 6(c)(ii).) The "Reston Association may also pursue post-judgment enforcement action and, in appropriate cases, as determined by the Board of Directors, foreclose upon a lien."  (Id.)  Either through its attorney or staff, the Association "may record a memorandum of lien at any time they believe that such recordation would protect Reston Association's rights or enhance its collection efforts." (Id.; Resolution 6(c)(iii).)  The Association will charge the following to any account for which a lien is recorded: (1) the costs of collection, including court costs and administrative costs, associated with "the preparation, recordation, and execution of the lien"; (2) the Clerk of  Court's recordation fees and costs associated with providing the notice of the lien to the owner; (3) costs associated with the preparation, execution, and recordation of a lien release; (4) the Clerk of Court's fees for recording the lien release; and (4) attorney's fees incurred by the Association as a result of these collection efforts.  (Id.)

The Resolution also provides that "in addition to or instead of recording a lien . . . the Association may authorize [its] attorney to pursue obtaining [sic.] a personal judgment against the Owner for any outstanding obligations to the Reston Association." (Id.; Resolution 6(c)(iv).) And consistent with the Owner's recorded Covenants, "[t]he delinquent Owner's account shall also be assessed an amount equal to the attorney's fees incurred by [the Association] as a result of these collection efforts." (Id.)

2.    **The Association Obtains Default Judgments and Initiates Garnishment Actions Against Ms. Hill.**

After Ms. Hill became delinquent, the Reston Association referred her account to Chadwick Washington to commence collection efforts.  On June 17, 2009, Chadwick Washington filed a warrant-in-debt action against Ms. Hill in Fairfax County General District Court.  (Def.'s Ex. 3.)[1]  Ms. Hill failed to make an appearance on the return date to contest the allegations, so, on August 17, 2009, the court entered default judgment against her.  (Compl. ¶ 13.)  The amounts awarded were $1,631.30, plus 6% interest from June 9, 2009 until paid, costs of $65.00, and $525 in attorney's fees.  (Def.'s Ex. 4.)  To enforce its judgment, Chadwick Washington initiated a garnishment proceeding on July 13, 2011 by completing and filing in the Fairfax County General District Court the standard form DC-450 entitled "Suggestion for Summons in Garnishment" provided on the Virginia Judicial System website.  (See Def.'s Ex.

---

[1] The court may take judicial notice of Defendant's Exhibit 3 (and other exhibits attached to this Motion) because the June 17, 2009 lawsuit, although not attached, is explicitly referred to and relied upon in the Complaint.  See Fed. R. Civ. P. 10(c); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (court may review "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (citation omitted); see also Am. Chiropractic v. Trigon Healthcare, 367 F.3d 212, 234 (4th Cir. 2004) (when a defendant attaches a document to its motion to dismiss, "a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.").

5.)[2]  The form, as modeled in accordance with Va. Code § 8.01-512.3, provides a line for entry

of a claim of "Garnishment Costs."  On this line, Chadwick Washington recorded its claim of

$294 in garnishment costs.  Chadwick Washington filed a subsequent garnishment action to

satisfy the judgment on March 21, 2012, again using the DC-450 form.  (Def.'s Ex. 6.)

On October 6, 2011, Chadwick Washington filed another warrant-in-debt action in

Fairfax General District Court.  (Def.'s Ex. 7.)  Again, Ms. Hill did not appear to defend against

the allegations, and the court, on December 6, 2011, entered a default judgment against her.

(Def.'s Ex. 8.)  The judgment was for $1,144.00, plus interest at the rate of 12% from October

29, 2009 until paid, $58.00 in costs, and attorney's fees equal to 20% of the judgment amount.

(Id.)  To date, Chadwick Washington has filed no garnishment actions to collect payment of the

December 2011 default judgment.

### 3.     Chadwick Washington Sends Ms. Hill Two Collection Letters in 2012.

As of March 2012, Ms. Hill had neither satisfied the outstanding default judgments

entered against her nor paid additional home owner assessments that had come due.  So, on

March 26, 2012, Chadwick Washington mailed her a letter with a Detail Ledger Report

("Ledger") of her account enclosed.  (Compl. Ex. A; Mar. 26, 2012 Letter.)  The letter stated that

as of that date Ms. Hill owed the Association a total balance of $4,988.36; an amount that

included attorney's fees, interest, and costs.  (Id. at 1.)   The Ledger dates back to January 1,

2005, and clearly shows how payments are apportioned and interest calculated.  It reveals that

interest was never added against sums owed for late fees, attorney's fees, or court costs.  (Id. at

2.)

---

[2] The form can be found at the following web address:
http://www.courts.state.va.us/forms/district/dc450.pdf (last visited Aug. 22, 2012).

On May 18, 2012, Chadwick Washington mailed Ms. Hill another letter.  This one stating that she had failed to pay her 2012 assessment; therefore, in addition to the sums she previously owed, she owed an additional $565.00 (the amount of the annual assessment), $56.00 in late fees, $225.00 as a lien covenant charge, $768.93 in attorneys' fees and costs secured by liens, and $10.00 for "[c]ost of docketing judgment."  (Compl. Ex. B; May 18, 2012 Letter.)

### C.    The Class Action Complaint.

On June 19 2012, Miss Hill filed a Complaint asserting claims under the FDCPA on behalf of herself and all similarly situated individuals.  The Complaint alleged Chadwick Washington had violated the FDCPA by sending letters, filing lawsuits, and commencing garnishment actions that contained or were based on false and deceptive statements and allegations.  (Compl. ¶11.)  Specifically, the Complaint alleges that Chadwick Washington:

a)  misrepresented that the Plaintiffs were liable for attorneys' fees that had not been awarded by a court in violation of the Virginia Condominium Act ("VCA"), Va. Code § 55-79.84(E);

b)  misrepresented the amount of interest due because it purported to assess interest on late fees, attorneys' fees, and garnishment costs without legal authority;

c)  misrepresented the interest rate because it claimed an amount of interest (12%) that was beyond what was permitted under § 55-79.84(E) of the VCA;

d)  misrepresented the computation of interest because it computed the amount of interest due prior to crediting payments made by Ms. Hill;

e)  misrepresented that Ms. Hill was liable for late fees that exceeded $50 per month in violation of § 55-79.80:2 of the VCA;

f)  misrepresented that it could file a memorandum of lien against Ms. Hill's property to secure debts other than late assessments in violation of § 55-79.84(A) ; and

g)  misrepresented in the filing of garnishment proceedings that Ms. Hill was liable for garnishment costs.

Based on her individualized allegations, Ms. Hill proposes a class and two subclasses defined as follows:

- [Class:]  All natural persons who received correspondence from the Defendant and/or was sued or garnished by a client represented by the Defendant in a General District Court located within the Eastern District of Virginia, Alexandria Division, where the Defendant demanded payments of sums from the consumers that included either interest over 6%, interest on more than the principal balance, interest without crediting payments, interest that wasn't due, attorneys' fees that had not been awarded by a court, garnishment costs, late fees above $50.00, or other sums that exceed the amount authorized by Virginia law:

- Subclass 1:  All natural persons who received correspondence from the Defendant demanding payment or was sued or garnished by a client represented by the Defendant in a General District Court located within the Eastern District of Virginia, Alexandria Division, for which the consumer ultimately paid more than what was actually due and/or awarded by the court in the underlying judgment within the past two years from the date of the filing of this Complaint ("the actual damages subclass");

- Subclass 2:  All natural persons who received correspondence from the Defendant demanding payment or was sued or garnished by a client represented by the Defendant in a General District Court located within the Eastern District of Virginia, Alexandria Division, who received a demand for payment, suffered a judgment or garnishment in favor of the Defendant's client, and for which the consumer did not ultimately pay an amount in excess of that which was actually due and/or which was awarded by the Court within the past one year from the date of filing of this Complaint ("the statutory damages subclass").

Based on these allegations, the Complaint asserts that Chadwick Washington violated three provisions of the FDCPA and divides the violations in three counts:  Count I alleges violations of 15 U.S.C. § 1692d(1), Count II alleges violations of 1692e, and Count III alleges violations of 1692f.

## ARGUMENT

### A.   Standard for Motion to Dismiss.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim.  Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).  While

a complaint need not contain "detailed factual allegations," it must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Iqbal, 556 U.S. at 678.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 557).

> **B.      Legal Framework For Alleged FDCPA Violations**

An FDCPA claim requires a plaintiff to establish the following elements: (1) the defendant is a "debt collector"; (2) the plaintiff is the object of collection activity from a consumer debt; and (3) the defendant engaged in some act or omission specifically prohibited by the FDCPA.  Dikun v. Streich, 369 F. Supp. 2d 781, 784-85 (E.D. Va. 2005).  Here, Plaintiff contends that Chadwick Washington's collection activities violated three separate FDCPA provisions: 15 U.S.C. §§ 1692f(1), 1692e, and 1692d(1).

> **1.      Count I – 15 U.S.C. § 1692f.**

Section 1692f prohibits debt collectors from using unfair or unconscionable means to collect a debt.  Subsection (1) specifically forbids collecting interest, fees, charges, or expenses incidental to the principal obligation, unless that amount is expressly authorized by the debt agreement or permitted by law.  Congress did not define "unfair or unconscionable."  "[C]ourts have considered an action unfair where it is 'marked by injustice, partiality, or deception,' and unconscionable when it is 'unscrupulous,' 'show[s] no regard for conscience,' or 'affront[s] the sense of justice, decency, or reasonableness.'"  Penn v. Cumberland, 2012 U.S. Dist. LEXIS 104565, at *29–*30 (E.D. Va. July 2012) (Ellis, J.) (citation omitted).

The Complaint contains no factual allegation plausibly demonstrating that Chadwick Washington used "unfair or unconscionable" means to collect the Plaintiffs' debts.  In fact, the Complaint contains little more than labels and conclusions of wrongdoing bereft of any factual support.  A properly pleaded claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555.  Still, even assuming Plaintiff pleaded a proper claim, and as explained more fully *infra*, Chadwick Washington did not violate § 1692f because its actions were taken pursuant to the Association's recorded Covenants and Resolutions, and in accordance with applicable Virginia law.

Courts have also held that "§ 1692f(1) applies only if the *debt collector* adds interest or fees, not if the *creditor* improperly calculated the amount owed." Kasalo v. NCSPLUS Inc., 2011 U.S. Dist. LEXIS 114480, at *16 (N.D. Ill. Oct. 4, 2011).  Cases discussing possible violations of § 1692f pertain to charges added and actions taken by debt collectors after the account was placed for collection. E.g., Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 365–66 (3d Cir. 2011) (finding debtor stated a claim under § 1962f when debt collector allegedly added unauthorized charges for its own attorney fees and costs); Hartman v. Great Seneca Fin. Corp., 569 F.3d 606, 612-14 (6th Cir. 2009) (stating debt collector generated document evidencing debt that appeared to be credit card statement but was not a copy of actual statement); Seeger v. AFNI, Inc., 548 F.3d 1107, 1111-13 (7th Cir. 2008) (finding debt collector added 15% collection fee on top of amount reported by creditor).

No where in Plaintiff's Complaint does she allege that Chadwick Washington imposed charges that were not assessed by the Association.  Still, and as discussed *infra*, the Reston Associations' Covenants and Resolutions imposed most of the charges included on Plaintiffs' accounts and were not "added" by Chadwick Washington to the sum due and owing.  And while

Chadwick Washington may have computed the interest and fees due in certain instances, it did so only in accordance with the rules established by the Association.

Finally, case law indicates that Section 1692f claims cannot coexist with Section 1692e claims to the extent both claims are based on the same allegedly wrongful conduct. See Penn, 2012 U.S. Dist. LEXIS 104565, at *32 ("Moreover, Count X also fails because Penn does not allege any conduct in it separate from the conduct that forms the basis of the § 1692e claims."); Stewart v. Bierman, ___ F. Supp. 2d ___, 2012 U.S. Dist. LEXIS 64355, at *26–*27 (D. Md. 2012) (§ 1692f claim must be dismissed if it fails to allege any conduct separate and distinct from § 1692e claims); Foti v. NCO Fin. Sys., 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006) (finding that complaint was "deficient in that it does not identify any misconduct beyond that which [p]laintiffs assert violate other provisions of the FDCPA").

Here, it is evident from the face of the Complaint that the Section 1692f(1) claim (Count I) must be dismissed because it is based on the exact same allegedly wrongful conduct asserted with respect to Section 1692e (Count II). (Compare Compl. ¶ 50 with Compl ¶¶ 53–56.)

**2.      Count II – 15 U.S.C. § 1692e**

Section 1692e(2) prohibits the false representation of the amount, character or legal status of a debt. To prevail on a false representation theory, a plaintiff must prove the statement is both false *and* material. Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033 (9th Cir. 2010); Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596 (6th Cir. 2009); Hahn v. Triumph P'ships LLC, 557 F.3d 755, 757-58 (7th Cir. 2009); cf. Warren v. Sessoms & Rogers, 676 F.3d 365 (4th Cir. 2012) (materiality requirement is not applicable to § 1692e(11) because the conduct contemplated there involves a failure to *disclose* rather than a false means used to *collect* a debt.).

Here, the total amount of debt is concededly material, but the documents referenced in the Complaint and attached to this Motion make crystal clear that Plaintiff, in fact, legally owed what Chadwick Washington said she owed.  Moreover, the demand letters, lawsuits, and garnishment proceedings are not actionable because no statement contained in them would mislead the "least sophisticated consumer."  <u>United States v. Nat'l Fin. Servs., Inc.</u>, 98 F.3d 131, 135–36 (4th Cir. 1996).  The "least sophisticated consumer" test requires a court to evaluate a communication "as a whole, not sentence-by-sentence," since even the least sophisticated consumer is bound to read a communication in its entirety.  <u>Vitullo v. Mancini</u>, 684 F. Supp. 2d 747, 756 (E.D. Va. 2010).

### 3.     Count III – 15 U.S.C. § 1692d(1).

Section 1692d provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.  Specifically, Subsection (1) makes it a violation to use or threaten to use violence or other criminal means to harm the physical person, reputation, or property of any person.  Plaintiff contends that Chadwick Washington's "attempts to garnish amounts that were not awarded in the underlying judgment, or which were not otherwise proper under Virginia law, constituted violations of Virginia Code § 8.01-511, an offense classified as a Class 1 misdemeanor." (Compl. ¶ 36.)

The only violation claimed with respect to garnishments is that Chadwick Washington made a claim for garnishment costs that had not been awarded by a court.  This is not true because Virginia's garnishment process is judicially supervised and Virginia law provides for the assessment of garnishment costs.  Even assuming this is true it pales in comparison to the type of conduct necessary to violate § 1692d(1).  <u>Compare</u> <u>Bassett v. I.C. Sys., Inc.</u>, 715 F. Supp. 2d

803, 809 (N.D. Ill. 2010) (finding that a debt collector calling a debtor a liar, laughing at him, and accusing him of making excuses did not constitute a violation of § 1692d) with Bryant v. Bonded Accounts Serv./Check Recovery, Inc., 208 F.R.D. 251, 256 (D. Minn. 2000) (finding no violation of § 1692d where language of a letter implied the debtor would not be able to get credit in an emergency) with Horkey v. J.V.D.B. & Assocs., 333 F.3d 769, 774 (7th Cir. 2003) (statement asking debtor's coworker to tell the debtor to "stop being such a f*cking b*tch" violated the statute because the natural consequence was to abuse the hearer), Erickson v. Messerli & Kramer P.A., No. 09-3044, 2011 U.S. Dist. LEXIS 52517 (D. Minn. May 16, 2011) (encouraging a plaintiff to come and engage in an altercation with the defendant violated § 1692d(1)) and Horkey v. J.V.D.B. & Assocs., Inc., 179 F. Supp. 2d 861, 868 (N.D. Ill. 2002) (finding that a defendant's use of profane language violated Section 1692d(2)).

The alleged misconduct in this case falls well short of the harassing, oppressive, or abusive misconduct needed to establish a claim under § 1692d(1).

## C.     Chadwick Washington's Demand Letters Do Not Violate the FDCPA.

Ms. Hill contends that each Chadwick Washington demand letter referenced in the Complaint contains "numerous false, deceptive, and/or misleading representations in connection with the collection of debt." (Compl. ¶¶ 11.) The specific demand letters sent to Ms. Hill and referenced in the Complaint were mailed on March 26, 2012 and May 18, 2012. (Compl. ¶ 10.) Plaintiff claims these letters contained a multitude of material misrepresentations that violate the FDCPA. After considering the allegations *seriatim* it becomes evident that they lack any factual or legal support and should accordingly be dismissed with prejudice.

1. **Chadwick Washington Did Not Misrepresent that Ms. Hill Was Liable for Attorneys' Fees.**

    a. **Ms. Hill was contractually obligated to pay attorneys' fees incurred in the collections process.**

"When a debtor has contractually agreed to pay attorneys' fees and collection costs, a debt collector may, without a court's permission, state those fees and costs and include that amount in the dunning letter." Fields v. Wilber Law Firm, P.C., 383 F.3d 562, 565 (7th Cir. 2004) ("Essentially, Fields asks us to endorse an approach that would require every debt collector under the FDCPA to go to court every time it sought to enforce a provision in a payment agreement signed by the debtor that allows reimbursement of attorneys' fees and collection costs. Plainly stated, the statute does not require such an extraordinary result."); see also Singer v. Pierce & Assocs., P.C., 383 F.3d 596, 598-99 (7th Cir. 2004); Miller v. Wolpoff & Abramson, LLP, 321 F.3d 292 (2d Cir. 2003); Freyermuth v. Credit Bureau Services, Inc., 248 F.3d 767 (8th Cir. 2001). Shapiro v. Riddle & Assocs., P.C., 240 F. Supp. 2d 287, 289-90 (S.D.N.Y.), aff'd, 351 F.3d 63 (2d Cir. 2003) (holding that it was not an FDCPA violation to include an attorneys' fees charge in a debt collection letter when that fee was authorized by an agreement between the creditor and debtor).

Chadwick Washington did not violate the FDCPA by stating a claim for attorneys' fees expressly authorized by an agreement entered between the parties. See, e.g., 15 U.S.C. 1692f(1) (violation to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless *such amount is expressly authorized by the agreement creating the debt* or permitted by law."). As noted *supra*, the Covenants recorded in the land records of Fairfax County provide that the Reston Association may charge a "(i) a late fee on an overdue Assessment not to exceed ten percent of the Assessment; (ii) the costs, including attorney's fees

- 13 -

and court costs, for collection of Assessments and of enforcing any of the provisions of this Deed; and (iii) interest on overdue sums, up to the maximum rate permitted by law." (Covenants § V.10; Ex. 2.) In addition, the Resolution provides that the Association "may authorize [its] attorney to pursue" a personal judgment against a property owner and assess attorney's fees incurred by the Association as a result of its collection efforts. (Resolution § 6(c)(iv); Compl. ¶ 11(a).) Accordingly, the Association had a contractual right to attorneys' fees under the plain terms of the Covenants and Resolution documents executed by the parties.

> **b.      Chadwick Washington made no misrepresentation by stating the amount of attorneys' fees Ms. Hill owed as a result of the default judgments entered against her.**

The March 26, 2012 letter told Ms. Hill only that according to Chadwick Washington's files "she owed the Association a total balance of $4,988.36, including attorney's fees, interest and costs." (Compl. Ex. A.) In the May 18, 2012 letter, Chadwick Washington stated that Ms. Hill owed a total of $5,300.22, which included in part:

- $1,747.33 — Judgment balance for August 2009 Judgment which included annual assessments, late fees, court costs, attorneys' fees and interest through May 18, 2012;

- $1,927.46 — Judgment balance for December 2011 Judgment which annual assessments, court costs, attorneys' fees, and interest through May 18, 2012; and

- $768.93 — Attorneys' fees and costs secured by liens.

(Compl. Ex. B.)

Thus, both letters communicated to Ms. Hill merely that she remained liable for attorneys' fees either already awarded by a court or secured by liens against her property. There is nothing false, deceptive or misleading about these statements. To the contrary, these statements are true and accurate and as such cannot form the basis of an FDCPA claim.

2.      **Chadwick Washington Did Not Attempt to Collect Interest on Late Fees, Attorneys' Fees, or Garnishment Costs.**

Ms. Hill makes the claim that Chadwick Washington misrepresented the amount of interest owed because it assessed "interest on late fees, attorneys' fees, garnishment costs or other amounts" without authority.  (Compl. ¶ 11(b).)  Ms. Hill provides no factual support for this claim, but the very letters she attached to her Complaint reveal that her allegations are false. In the March 26 Letter, Chadwick Washington includes a Detail Ledger Report that demonstrates clearly that interest was charged only to the unpaid assessments and no other sums.  (See Ex. B.) Because Ms. Hill has no factual support for her claim, and the claim is proven false by the very documents she attached to her Complaint, it must be dismissed.

3.      **The Interest Rate Was Not Misrepresented.**

Ms. Hill next asserts that the demand letters are false because they attempted to collect interest at 12%.  This alleged misrepresentation is made nowhere in the demand letters.  In fact, the only place where Chadwick Washington made this claim was in the warrant-in-debt action filed on October 7, 2011, in Fairfax General District Court.  Moreover, the amount requested there has already been brought to judgment and awarded to the Association.  Any claim for an alleged misrepresentation in those proceedings is not cognizable in this Court because of the Rooker-Feldman doctrine.

4.      **No Facts in the Complaint Support the Claim That the Computation of Interest Was False.**

Ms. Hill claims that "[t]he computation of interest by Defendant was also false, deceptive, and/or misleading."  (Compl. ¶ 11(d).)  She says this is so because "Defendanat computed the interest prior to crediting any payments by owners."  (Id.)  Again, Ms. Hill provides no factual support for this claim.  But the Detail Ledger attached to the March 26 letter

reveals this claim to be untrue on its face. The Ledger shows that in each instance where a payment was received, Chadwick Washington computed the interest *after* crediting the amount of the payment. This allegation should accordingly be dismissed.

5.      **The May 18, 2012 Letter's Demand Did Not Violate the FDCPA Because the Governing Documents Provided for a Late Fee in That Amount.**

The recorded Covenants provide in relevant part that "a late fee on an overdue Assessment not to exceed ten percent of the Assessment" will be charged to the delinquent owner. (Covenants § V.10; Ex. 2 at 24.) The June 22, 2006 Resolution also provides that "any late assessment would "automatically incur a late payment charge . . . of ten percent (10%) of the Annual Assessment installment amount." (Resolution § 4(c); Compl. Ex. C.) The May 18, 2012 Letter provides that the Annual Assessment due for January 2012 through December 2012 was $565.00. A late payment charge of $56.50 is in fact 10% of the "Annual Assessment installment amount" and is consistent with the governing Covenants and Resolution.

Ms. Hill erroneously cites to Va. Code. § 55-79.80:2 for the proposition that any charge for a "violation of the condominium instruments shall not exceed $50 for a single offense." (Compl. ¶ 11(e).) Section 55-70.80:2 is a provision of the Virginia Condominium Act, however, and has no application to this case because the Reston Association is a property owner's association as defined by the Virginia Property Owner's Association Act ("POAA"), Title 55, Chapter 26.

The POAA does contain a provision, Va. Code § 55-513, that applies to the maintenance, upkeep, and use of common areas. Under subsection (B) of this provision, any owner who misuses or damages these areas—after receiving notice and having an opportunity to be heard— can be penalized up to $50 or $10 per day for any offense of a continuing nature. As is clear, this provision serves as a cap on the amounts a property owner can be charged for violating

certain rules established by the property owner's association.  It does not apply as a ceiling for the amounts an association can charge for late fees that are expressly authorized by the Association's governing documents.  Plaintiff's claims based on an alleged misrepresentation of excessive late fees should accordingly be dismissed.

> **6.   The Letters Are Not Misleading Because They Provide That a Memorandum of Lien will be Filed Against the Property For Items Other Than Unpaid Assessments.**

Ms. Hill next claims that the letters are false and misleading because they state that a memorandum of lien will be filed against her property "to secure past due assessments and the remaining balance of the annual assessment as well as other charges." (Compl. ¶ 11(f).)  She alleges "the Condominium Act only allows a lien for unpaid assessments." (Id.)  As noted *supra*, the Condominium Act does not apply to the Reston Association because it is not a condominium, but a property owner's association as defined under the POAA.  The POAA does include a provision that states "[o]nce perfected, the association shall have a lien on every lot for unpaid assessments levied against that lot in accordance with the provisions of this chapter and all lawful provisions of the declaration." Va. Code § 55-516(A).  Yet, this provision does not preclude Reston Association from defining the scope of what constitutes an assessment for which it may have a lien in its governing documents, and there is no allegation in the Complaint that Chadwick Washington filed liens that exceeded the sums for which Reston Association could lawfully collect under the governing documents.

Indeed, the Covenant expressly provides that late fees on an overdue assessment, the costs, including attorneys' fees and court costs, for collection of assessments, and interest on overdue sums shall "be a personal obligation of the owner of any portion of the Property and shall be added to and become a part of the lienable Assessment on the Lot of portion of the

Property." (Covenants § V.10; Ex. 2 at 24.)  Thus, Chadwick Washington did not misrepresent

an ability to impose a lien on Ms. Hill's property for sums other than the late assessments

because the Covenants provided expressly that those sums could become "part of the *lienable*

Assessment."  All claims arising from this allegation should be dismissed.

### 7. The Letters Do Not Falsely Claim That Ms. Hill Is Liable for Garnishment Costs.

Ms. Hill also claims that "[t]he letters falsely claim that Ms. Hill is liable for garnishment

costs." (Compl. ¶ 11(g).)  To the contrary, neither the March 26, 2012 Letter nor the May 18,

2012 Letter mention that Ms. Hill was liable for garnishment costs.

Nevertheless, Chadwick and Washington did lawfully assert a claim for garnishment

costs in the garnishment proceedings they instituted against Ms. Hill.  Virginia Code § 8.01-

512.3 provides the legislatively-ordained form for a garnishment summons that must be used in

all garnishment proceedings.  The form contains a specific box for "garnishment costs." (Id.)

Under a writ of *fieri facias*, the duly authorized officer is obligated to execute the writ and to

"make from the intangible personal estate of the judgment debtor(s) the principal, interest, costs

and attorneys' fees . . . shown in the garnishment summons." (Id.)  Because the garnishment

summonses filed in this case complied with Virginia law, they cannot support a claim of

wrongdoing under the FDCPA.

What is more, this Court has no jurisdiction to entertain Ms. Hill's allegations that relate

to garnishment costs because they are barred by the Rooker-Feldman doctrine.

### D. Chadwick Washington Did Not Violate the FDCPA by Filing Lawsuits Against Ms. Hill.

To the extent Ms. Hill claims that Chadwick Washington violated the FDCPA by filing

two warrant-in-debt actions against her, the Rooker-Feldman doctrine prevents those claims from

being heard by this Court.  Even if <u>Rooker-Feldman</u> did not apply, the claims should be dismissed because (1) any claim arising from a misrepresentation made in the June 17, 2009 lawsuit is time barred and (2) the representations made in the October 16, 2011 lawsuit were true and accurate.

**1.      The FDCPA's Statute of Limitations bars all claims arising from the June 17, 2009 lawsuit.**

The FDCPA provides that "action[s] to enforce any liability created by [the Act]" must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); <u>see also</u> <u>Vitullo v. Mancini</u>, 684 F. Supp. 2d 747, 753 (E.D. Va. 2010) (Ellis, J.) (holding that claims based on letter which, *inter alia*, contained allegedly false statements and was sent more than one year prior to the filing of the FDCPA claim are time-barred).  Any discrete act associated with the filing of the June 17, 2009 lawsuit and that allegedly violated the FDCPA occurred outside the one-year limitations period, and any claim based on that alleged wrongful act is time-barred.

**2.      The October 6, 2011 Warrant-in-Debt contains no misrepresentation that would support an FDCPA claim.**

The warrant-in-debt Chadwick Washington filed on October 6, 2011 stated a claim for $1,144.00 in late assessments, interest at 12% from October 29, 2009 until paid, $58 in costs, and reasonable attorneys' fees.  (Def.'s Ex. 7.)  These claims were true and valid debts because Ms. Hill did indeed owe $1,144.00 for late assessments.  Plus, the Resolution provided that "[a]ll past due account balances will incur finance charges at an annual rate of twelve percent (12%)." (Resolution § 4(b).)  Although Plaintiff may claim that this interest rate exceeds the 6% interest rate prescribed by Va. Code § 6.2-301(A), that provision applies only "where there is an obligation to pay interest and *no express contract to pay interest at a specified rate*." <u>J.W.</u>

Creech, Inc. v. Norfolk Air Conditioning Corp., 237 Va. 320, 327 (1989) (emphasis added). Moreover, and as discussed *supra*, the Resolution and Covenants provided for a claim for attorneys' fees.  Accordingly, Ms. Hill can claim no FDCPA violation arising from the warrant-in-debt action filed on October 6, 2011.

## Conclusion

Plaintiff's Class Action Complaint is defective in myriad ways.  For instance, it asserts legal claims bereft of factual support, seeks relief under mutually exclusive statutory provisions, and inaccurately claims that Defendant falsely claimed an entitlement to attorneys' fees, interest, excessive late fees, and garnishment costs.  Perhaps most galling, it bases some of its allegations on inapposite provisions of Virginia law and asserts wrongdoing when its own exhibits conclusively demonstrate that Chadwick Washington acted appropriately and lawfully.

Defendant complied with its obligations under the FDCPA in every way and each representation it made to Ms. Hill rested on a well-founded factual basis.  For these reasons, as well as others stated in this Memorandum, Defendant respectfully requests that this Court dismiss Plaintiff's Class Action Complaint and afford such other relief as it deems proper. Respectfully submitted,

> CHADWICK, WASHINGTON, MORIARTY,
> ELMORE & BUNN, P.C.
>
>
> By: _____"/s/"_____
>           Joseph R. Pope

William D. Bayliss, Esquire (VSB No. 13741)
bbayliss@williamsmullen.com
Brendan D. O'Toole, Esq. (VSB # 71329)
botoole@williamsmullen.com
Joseph R. Pope, Esq. (VSB # 71371)
jpope@williamsmullen.com
Williams, Mullen, Clark & Dobbins, P.C.

200 South 10th Street
Richmond, VA 23219
Telephone: (804) 420-6000
Facsimile:  (804) 420-6507
*Counsel for Defendant Chadwick, Washington, Moriarty, Elmore & Bunn, P.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of August, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

**Plaintiff**

**Alice D. Hill**                                    represented by   **Leonard Anthony Bennett**
*on behalf of herself and all similarly*                          Consumer Litigation Associates
*situated individuals*                                            763 J Clyde Morris Boulevard
                                                                  Suite 1A
                                                                  Newport News, VA 23601
                                                                  757-930-3660
                                                                  Fax: 757-930-3662
                                                                  Email: lenbennett@cox.net
                                                                  *LEAD ATTORNEY*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Andrew Joseph Guzzo**
                                                                  Surovell Isaacs Peterson & Levy PLC
                                                                  4010 University Drive
                                                                  Second Floor
                                                                  Fairfax, VA 22030
                                                                  703-251-5400
                                                                  Fax: 703-541-9205
                                                                  Email: aguzzo@siplfirm.com
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Kristi Cahoon Kelly**
                                                                  Surovell Isaacs Petersen & Levy PLC
                                                                  4010 University Dr
                                                                  Suite 200
                                                                  Fairfax, VA 22030
                                                                  703-277-9774
                                                                  Fax: 703-591-9285
                                                                  Email: kkelly@siplfirm.com
                                                                  *ATTORNEY TO BE NOTICED*

**Susan Mary Rotkis**
Consumer Litigation Associates
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
757-930-3660
Fax: (757) 930-3662
Email: srotkis@clalegal.com
*ATTORNEY TO BE NOTICED*


By: _____”/s/”_____

William D. Bayliss, Esquire (VSB No. 13741)
bbayliss@williamsmullen.com
Brendan D. O'Toole, Esq. (VSB # 71329)
botoole@williamsmullen.com
Joseph R. Pope, Esq. (VSB # 71371)
jpope@williamsmullen.com
WILLIAMS, MULLEN, CLARK & DOBBINS, P.C.
Williams Mullen Center
200 South 10th Street, PO Box 1320
Richmond, VA  23218-1320
Telephone:  804.420.6000
Facsimile:  804.420.6507
 *Counsel for Defendant Chadwick, Washington, Moriarty, Elmore & Bunn, P.C.*

18869599_2