# Amended Bylaws of Reston Association



DEFENDANT'S EXHIBIT

## Article I Interpretive Provisions

**Section I.1. Name.** The name of the corporation is Reston Association, hereinafter referred to as the "Association".

**Section I.2. Definitions.** Terms used herein without definition shall have the meanings specified for such terms in the Nonstock Corporation Act and the Property Owners' Association Act ("POAA"). Capitalized terms used herein shall have the meanings specified for such terms herein or in the Deed or Articles of Incorporation (collectively with these Bylaws, the "Reston Documents").

## Article II Policies

Consistent with the purposes of the Association set forth in the Deed, it shall be the policy of the Association to:

1. Foster the fullest usage of the lands and facilities managed by it and serve the leisure time needs of the Association residents by establishing and seeking actively to have established leisure time programs in the Association facilities and lands.

2. Encourage the involvement of other organizations and agencies in promoting the peace, health, comfort, safety, and general welfare of Reston residents.

3. Represent its interests, where appropriate, before public and private organizations.

4. Encourage maximum volunteer member participation in the affairs of the Association.

5. Utilize professional management necessary to assure attainment of Association purposes and these and other policies as may be established by the Board of Directors.

## Article III Meetings of Members

**Section III.1. Annual Meeting.** The Annual Meeting of Members shall be held on the second Tuesday in April or such other date in April and at such place and time as the Board of Directors may determine. The purposes of the Annual Members Meeting are to: (1) hear reports on the state of the Association; (2) receive and hear the results of the election of Directors and any other referenda; and (3) receive comments from Members.

**Section III.2. Special Meetings.** Special Meetings of Members may be called by a majority vote of the Board of Directors at a meeting where a quorum is present. The purpose of the meeting shall be limited to such business described through the vote of the Board of Directors or in the petition of Members and in Notice to the Members.

**Section III.3. Notice of Meetings.**  Written Notice stating the place, date, and time of each Annual Meeting and, in the case of a Special Meeting of the Members, the purposes for which the Special Meeting is called be given by the Secretary (or as directed by the Secretary) to each Member entitled to vote at such meeting not less than ten or more than fifty days before the date of the meeting.

**Section III.4. Quorum.**  There shall be no quorum requirement for the conduct of business at an Annual Meeting or a Special Meeting of the Members.

# Article IV Voting

Member voting rights, manner of Member voting, Member exercise of vote, referenda, and the recordation date to determine those Members entitled to vote are delineated in Deed Section III.4.

# Article V Board of Directors

The powers and duties of the Board of Directors; the number, composition, and terms of Directors; and the removal, resignation, or vacancy of Board Directors are delineated in Deed Section III.5.

**Section V.1. Method of Nomination.**

(a) **Petition of Candidacy.** Except for the Category B Director seat, the candidates for election shall file a petition of candidacy for either an at-large or a district seat, but not both, with the Secretary or chair of the Elections Committee, by the date set by the Board of Directors. The petition shall be signed by Members of not less than twenty-five different households who are eligible to vote for such seat. An incumbent Director who is in the first or second year of a three-year term and chooses to file a petition of candidacy for a different seat is not required to resign from the current seat. He shall choose which of the seats he will accept immediately following the election.  Any subsequent resignation shall be treated as a vacancy pursuant to Deed Section III.5(d)(3).

(b) **Statement of Candidacy.** Except for the Category B Director seat, the candidates shall also file, with the Secretary or chair of the Elections Committee, a signed statement of candidacy, which shall include his name, real property address, and Director seat sought.  The statement of candidacy may include a description of the candidate's qualifications and goals in accordance with any Rules and Regulations adopted by the Board of Directors.

(c) **Category B Nominations.** The Board of Directors may adopt any resolutions that provide for the method of nomination of a candidate by Category B Members, who shall also have the right on the ballot to write-in any person eligible for election.

(d) **Eligibility.** Except for candidates for the Category B Director seat, no person shall be eligible for election or to serve as a member of the Board of Directors unless such person is a Member, residing in a residential property within the Reston Master Plan, and has no unpaid fee, regular or Special Assessment, attorneys' fees or costs, and/or outstanding violation of the Association Documents.  No employee of the Association may serve as a Director.

**Section V.2. Method of Election.** Election of all Directors shall be by referendum. Cumulative voting is not permitted. Those candidates receiving the largest number of votes shall be elected. In case of a tie vote between candidates, the winner among those candidates shall be determined by lot at the Annual Meeting pursuant to any resolutions adopted by the Board of Directors.

**Section V.3. Meetings of Board Directors.**

(a) **Initial Board Meeting.** The Initial Meeting of the newly composed Board of Directors shall be held on the day following the Annual Meeting of Members, at a place and time to be set by the Board of Directors. The primary purpose of such meeting shall be to elect Officers.

(b) **Regular Meetings.** Regular meetings of the Board of Directors may be held at such time and place as shall be determined from time to time by a majority of the Directors, provided, however, that such meetings shall be held at least quarterly during each fiscal year.

(c) **Special Meetings.** Special Meetings of the Board of Directors may be called by the President or at the request of any two Directors. Notice of Special Meetings shall be provided to the Directors at least two days in advance by first-class mail, telegram, telephone, hand delivery, or electronic means in accordance with any resolutions adopted by the Board of Directors, unless waived by a Director by attendance at the meeting or by written waiver signed before or after the meeting.

(d) **Notice of Board Meetings.** Notice of the time, date, and place of each meeting shall be published where it is reasonably calculated to be available to a majority of Members and shall be sent by first-class mail or by electronic means to any Member requesting such notice. Any Member may make a request to be notified on a continual basis of such meetings of the Board of Directors, in accordance with the POAA, as may be amended, and any resolutions adopted by the Board of Directors.

(e) **Open Meeting Requirement.** All meetings of the Board of Directors shall be open to the Members, in accordance with the POAA, as may be amended, and any resolutions adopted by the Board of Directors.

(f) **Conduct of Meetings.** The President shall preside over meetings of the Board of Directors and the Secretary shall keep the minutes of the meetings and record all resolutions adopted at the meetings and proceedings occurring at the meetings. The then current edition of Robert's Rules of Order, Newly Revised, shall govern the conduct of the meetings of the Board of Directors, as appropriate, when not in conflict with the POAA, the Nonstock Corporation Act, as both statutes may be amended, or the Reston Documents.

(g) **Location of Meetings.** The Board of Directors may hold their meetings in the Commonwealth of Virginia or outside the Commonwealth as the Board of Directors may from time to time determine.

(h) **Action by Directors without Meeting.** Any action by the Board of Directors required or permitted to be taken at any meeting may be taken without a meeting if a consent in writing setting forth the action taken shall be signed either before or after such action is taken by all of the Directors.

Any such written consent shall have the same force and effect as a unanimous vote and shall be filed with the minutes of the Board of Directors.

(i) **Use of Technology**. A meeting may be conducted by telephone or videoconference or similar electronic means, in accordance with the POAA, as may be amended, and any resolutions adopted by the Board of Directors. Directors participating in such a manner may vote and shall be deemed present for such a meeting.

(j) **Voting by Secret Ballot**. Voting by secret or written ballot in an open meeting shall not be permitted except for the election of Officers.

(k) **Executive Session**. The Board of Directors may convene in executive session, in accordance with the POAA and the Nonstock Corporation Act, as may be amended, and any resolutions adopted by the Board.

(l) **Recording Meetings of the Board of Directors**. Any Member may record any open portion of a meeting of the Board of Directors, as permitted in the POAA, as may be amended, and, pursuant to, any resolutions adopted by the Board of Directors.

(m) **Agenda Packets**. Members shall have the right to review agenda packets and materials, as permitted in the POAA, as may be amended, and, pursuant to, any resolutions adopted by the Board of Directors.

(n) **Member Comments**. Members shall have the right to be heard at meetings, as permitted in the POAA, as may be amended, and, pursuant to, any resolutions adopted by the Board.

(o) **Quorum**. Except as otherwise provided in the Reston Documents, a majority of the Directors shall constitute a quorum for the transaction of business. A quorum of Directors must be present, at all times during a meeting, except as provided in Deed Section III.5(d)(3).

(p) **Manner of Acting**. The act of a majority of the Directors present at a meeting at which a quorum exists shall be an act of the Board of Directors, unless a greater number is required by the Reston Documents.

**V.4 Removal.** Any Director may be removed for cause pursuant to Deed Section III.5(d)(1).

## Article VI Officers

### Section VI.1. Designation and Duties of Officers.

(a) **Designation.** The Officers of the Association shall be a President, Vice President, Chief Executive Officer ("CEO"), Secretary, and Treasurer. The Board of Directors may elect such other Officers as it deems desirable. No person may hold more than one office. The President and Vice President shall be elected Directors. The remaining Officers need not be Directors, but shall be residents of the Property. Any Member in Good Standing may serve as an Officer of the Association.

(b) **Duties of Officers**. Except as otherwise provided by the Reston Documents, the Officers each shall have such powers and duties as generally pertain to their respective offices, and as may be conferred by the Board. If any Officer is unable for any reason to perform the duties of the office, the President (or the Board of Directors if the President fails to do so) may appoint another qualified person to act in such Officer's stead on an interim basis.

**Section VI.2. Election of Officers.** Except for the CEO, Officers shall be elected annually by the Board of Directors at its Initial Meeting and serve until their successors are duly elected. The Board of Directors shall appoint a CEO, who shall be qualified by reason of education and experience, and determine the CEO's tenure, compensation and other terms of employment.

**Section VI.3. Resignation or Removal of Officers.**

(a) **Resignation**. Any Officer may resign by delivering written notice to the Board of Directors. Unless otherwise specified in the notice, such resignation shall take effect upon the receipt thereof, and acceptance by the Board of Directors of such resignation shall not be necessary to make it effective.

(b) **Removal**. Any Officer may be removed by the Board of Directors whenever the Officer loses his Good Standing status, or in the judgment of the Board of Directors, the best interests of the Association will be served thereby.

**Section VI.4. Vacancies.** A vacancy in any office may be filled by the Board of Directors for the unexpired portion of the term.

**Section VI.5. President**. The President shall be the chairman of the Board of Directors and all meetings of Members and shall be an *ex officio* member of all Board Committees. The President, as well as the CEO, shall have the authority to execute all deeds, contracts, or other documents on behalf of the Association.

**Section VI.6. Vice President.** The Vice President shall exercise the duties of the President in his absence.

**Section VI.7. Chief Executive Officer**. The CEO shall administer the affairs of the Association subject to the provisions of the Reston Documents and the policies of the Board of Directors. The CEO shall, as well as the President, have authority to execute all deeds, contracts, or other documents on behalf of the Association. The CEO shall prepare a biennial budget and upon its approval by the Board shall have the authority to disburse the sums appropriated. The CEO shall be responsible for any monies of the Association coming into the CEO's possession, for keeping accounting records, for preparation of financial statements and reports, and for filing and paying timely tax returns. The CEO shall have control over personnel and compensation schedules within limits of the approved budget. The CEO shall hire employees upon merit and fitness alone, and when the CEO deems it necessary for the good of the Association, shall suspend or remove employees in accordance with personnel policies adopted by the Board of Directors. The CEO may be required to give bond in such form and amount as may be determined by the Board. The CEO shall name an Acting CEO to exercise the CEO's duties in the CEO's temporary absence.

**Section VI.8. Secretary.**  The Secretary shall: keep the minutes of all meetings of the Association and of the Board of Directors; record all resolutions adopted by Board of Directors; have charge of such books and papers as the Board of Directors may direct and as may be required by Section 13.1-932 of the Nonstock Corporation Act and Section 55-510 of the POAA; give or cause to be given all notices required to be given by the Association; publish a copy of Board resolutions and the Rules and Regulations and notify each Member of any amendment thereto; maintain a register setting forth the place to which all notices to Members hereunder shall be delivered; file or cause to be filed the annual reports required by Section 13.1-936 of the Nonstock Corporation Act and Section 55-516.1 of the POAA, or as otherwise required by law; make it possible for any Member to inspect and copy at reasonable times and by appointment the records of the Association; and, in general, perform all the duties incident to the Office of Secretary.  The Secretary shall be assisted by and may delegate ministerial or non-discretionary duties to an Assistant Secretary appointed by the Board of Directors.

**Section VI.9. Treasurer.**   In coordination with the Association's staff and the Association's independent certified public accountants, the Treasurer shall: monitor and report to the Board of Directors, as needed, with respect to Association funds and securities; ensure that full and accurate financial records and books of account showing all receipts and disbursements are kept and that all required financial data, including the Statement of Common Expenses required by Deed Section V.11 are prepared; and, in general, perform all the duties incident to the Office of Treasurer.


# Article VII Fiscal

The basis of the Annual Assessment and the Board of Directors responsibility to adopt the annual budget and set aside reserves for repair and replacement are delineated in Article V of the Deed.


# Article VIII Insurance

## Section VIII.1. General Provisions.

(a) **Authority, Liability, and Notice**.  The Board of Directors shall have the power and responsibility on behalf of the Association to: (1) purchase insurance policies relating to the Common Area; (2) adjust all claims arising under such policies; and (3) sign and deliver releases upon payment of claims.  The cost of all insurance policies purchased by the Board relating to the Common Area shall be a Common Expense or a Limited Common Expense, as appropriate.  The Board of Directors shall not be liable for failure to obtain any coverages required by this Article or for any loss or damage resulting from such failure (i) if such failure is due to the unavailability of such coverages from reputable insurance companies; or (ii) if such coverages are available only at demonstrably unreasonable cost.  Exclusive authority to negotiate losses under policies purchased by or on behalf of the Association shall be vested in the Board of Directors or with its authorized representative.

(b) **Policy Requirements**.

(1) All policies of insurance shall be written by reputable companies licensed or qualified to do business in the Commonwealth of Virginia.

(2) The deductible or self-insured retention (if any) on any insurance policy purchased by the Board of Directors shall be a Common Expense (or a Limited Common Expense, as appropriate), provided, however, that the Association may, pursuant to Deed Section V.9, assess any deductible amount necessitated by the misuse or neglect of an Occupant, an Owner, or such Owner's tenant or such Owner's (or tenant's) household, company, guests, employees, agents, or invitees against the Lot owned by such Owner.

(3) Each such policy shall provide that:

(i) the insurer waives any right to claim by way of subrogation against the Association, the Board of Directors, any Occupant, any Owner, and the Owner's household, companies, guests, employees, tenants, agents, and invitees;

(ii) such policy shall not be cancelled, invalidated, or suspended due to the conduct of any Occupant, any Owner, or such Owner's tenant or such Owner's (or tenant's) household, company, guests, employees, agents, and invitees, or of any Member, Officer, or employee of the Board of Directors without a prior demand in writing that the Board of Directors cure the defect and it shall have so cured such defect within thirty days after such demand;

(iii) such policy may not be cancelled or substantially modified without at least thirty days prior written notice to the Board of Directors; and

(iv) the Association is the First Named Insured under such policy.

**Section VIII.2. Property Insurance**.

(a) **Coverage.**  The Board of Directors shall obtain and maintain a property insurance policy written on a Special Covered Causes of Loss Form for full replacement cost of any improvements located on the Common Area (exclusive of the land, excavations, foundations, and other items normally excluded from such coverage). The Board of Directors shall also obtain and maintain appropriate coverage on all personal property and real estate other than the Common Area owned by the Association.

(b) **Waivers and Endorsements**.  Each such policy should also provide:

(1) a waiver of any right of the insurer to repair, rebuild, or replace any damage or destruction, if a decision is made not to do so;

(2) the following endorsements (or equivalent): (i) "no control" (to the effect that coverage shall not be prejudiced by any act or neglect of any Owner or Occupant or their agents) when such act or neglect is not within the control of the insured or the Owners collectively, nor by any failure of the insured or the Owners collectively, to comply with any warranty or condition with regard to any portion of the Property over which the insured, the Occupants or the Owners collectively have no control; (ii) ordinance/law coverage for: (a) the "cost of demolition" of the undamaged portion of the Property; (b) "contingent liability from operation of building laws or codes;" and (c) "increased cost of construction;" (iii) "replacement

cost" or "guaranteed replacement cost;" (iv) "inflation guard;" and (v) "agreed amount" or "elimination of co-insurance" clause;

(3) that any "no other insurance" clause expressly exclude individual Owners' policies from its operation so that the property damage policy purchased by the Board of Directors shall be deemed primary coverage and any individual Owners' policies shall be deemed excess coverage, and in no event shall the insurance coverage obtained and maintained by the Board of Directors hereunder provide for or be brought into contribution with insurance purchased by individual Owners or mortgagees, unless otherwise required by law;

(4) such deductibles and self-insured retentions as to loss as the Board of Directors in its sole discretion deems prudent and economical; and

(5) to the extent a policy covers a dwelling located on any Lot, the standard mortgagee clause.

**Section VIII.3. Liability Insurance.** The Board of Directors shall obtain and maintain liability insurance in such limits as the Board may from time to time determine, insuring the Association, each Director and Officer, the Owners, Occupants, and the employees of the Association against any liability to the public or to any Occupant or any Owner or such Owner's tenants and such Owner's (or tenant's) household, company, guests, employees, agents, and invitees arising out of, or incident to the ownership or care, custody, control, and use of the Common Area or any facilities located in the public right-of-way. Such insurance shall be issued on a commercial general liability basis providing: (i) premises operations liability coverage; and (ii) products and completed operations coverage. This coverage, or a separate policy, shall also contain appropriate protection for the Association if it operates a website or conducts business using the website, email, or similar means. Reasonable amounts of "umbrella" liability insurance in excess of the primary limits shall also be obtained.

**Section VIII.4. Other Insurance.** The Board of Directors shall obtain and maintain:

(a) adequate fidelity insurance coverage to protect against dishonest acts on the part of Directors, Officers, trustees, and employees of the Association and others who handle or are responsible for handling funds of the Association, including the managing agent and volunteers. If the Association has delegated some or all of the responsibility for handling funds to a third party other than an employee, such third party shall be covered by its own fidelity insurance. Such fidelity insurance shall: (i) name the Association as the insured; and (ii) contain waivers of any defense based upon the exclusion of Persons who serve without compensation from any definition of "employee" or similar expression;

(b) workers' compensation and employers liability insurance if and to the extent necessary to meet the requirements of law (including a voluntary employees endorsement and an "all states" endorsement);

(c) if applicable, pressure, mechanical, and electrical equipment including information technology and air conditioning equipment coverage on a comprehensive form;

(d) directors and officers liability insurance, to the extent available, shall include non-monetary damages, breach of contract, fair housing disputes, and allegations of wrongful purchase of the insurance program in form, content, or amount;

(e) business auto bodily injury and property damage liability for owned, non-owned, and hired autos, physical damage for the vehicle's actual cash value, and garage keeper's liability for Common Area parking facilities; and

(f) such other insurance as the Board of Directors may determine from time to time. Such insurance may include, without limitation: (i) business income and extra expense; (ii) employee benefits; (iii) employment practices liability; (iv) medical payments protection; (v) electronic data processing coverage; (vi) fiduciary liability and pollution liability; (vii) surety bonds; (viii) camp accident; and (ix) special events coverage.

## Article IX Committees

**Section IX.1. Board Committees.** By resolution, the Board of Directors may create Board Committees, comprised of Directors and such staff and Members as it deems appropriate, to assist in the work of the Board of Directors. Such Committees shall not have any authority of the Board of Directors unless it is specifically delegated by any resolutions adopted by the Board of Directors.

**Section IX.2. Advisory Committees.** By resolution, the Board of Directors may create Advisory Committees comprised of Members to give advice on Association matters and to perform such duties as may be requested by the Board of Directors. Advisory Committees shall exist for a term of one year from the Annual Meeting of the Board of Directors and may be renewed at the discretion of the Board of Directors.

**Section IX.3. Other Committees.** By resolution, the Board of Directors may create other Committees it deems necessary, as permitted by the Nonstock Corporation Act.

**Section IX.4. Committee Member Appointment and Removal.**

(a) **Appointment.** Appointment of Members to Committees and Committee chairs shall be made by the Board pursuant to any resolutions adopted by the Board of Directors.

(b) **Removal.** Any Committee member may be removed by a two-thirds vote of the Board of Directors whenever, in its judgment, the best interests of the Association will be served thereby.

**Section IX.5. Committee Meetings.** The procedures which govern Committee meetings shall be the same as those set forth for meetings of the Board Directors in Bylaws Section V.3. The chair of the Committee shall serve as the presiding officer during such meetings.

## Article X Design Review Board

The composition; officers; powers and duties; and funding for the DRB are delineated in Deed Section III.6.

**Section X.1. Officers of the Design Review Board.** The DRB shall annually elect a chair and one or more vice-chair(s) from among its members. The chair or a vice chair shall be a member of any panel as may be designated as provided herein. The DRB secretary shall be an employee of the Association, appointed by the CEO as a non-voting member of the DRB. The DRB secretary may designate an assistant secretary or secretaries to perform some or all ministerial duties and may designate an acting DRB secretary to serve during any temporary absence.

**Section X.2. Meetings of the Design Review Board.** The DRB shall meet at least annually to review the Design Guidelines. Meetings of the DRB or of its panels shall be governed pursuant to the procedures set forth in Bylaws Section V.3. Any applicant or Affected Party shall have the right to meet with and be heard by the DRB or the panel considering the application. A quorum for the conduct of business by the DRB or a panel of the DRB shall be a majority of its members. A former DRB member may be asked by the DRB secretary or the designate to sit on a current panel in the event of extraordinary circumstances to establish a quorum. Decisions shall be made by a majority vote of those present recorded by the DRB secretary and signed by the DRB chair or DRB vice chair.

## Article XI Fiduciary Duties

**Section XI.1. General Standards of Conduct.** A Director or Officer shall discharge his duties, in accordance with his good faith judgment of the best interests of the Association, and in accordance with Sections 13.1-869E and 13.1-870 of the Nonstock Corporation Act, as may be amended, and any resolutions adopted by the Board of Directors.

**Section XI.2. Conflicts of Interest.** The conflict of interest provisions in Section 13.1-871 of the Nonstock Corporation Act, as may be amended, shall apply to Directors, Officers, members of the DRB and members of all entities and Committees established by the Reston Documents or the Board of Directors.

**Section XI.3. Liability and Indemnification.**

(a) **Liability.** The Officers and Directors of the Association, each member of the DRB, and each member of any entity or Committee established in accordance with the Reston Documents, in consideration of his services as such, shall not be liable to the Association or any Member for any mistake or judgment, negligence or otherwise, except for gross negligence or willful misconduct, and they shall have no personal liability with respect to any contract made by them on behalf of the Association.

(b) **Indemnification.** The Officers and Directors of the Association, each member of the DRB, and each member of any entity or Committee established in accordance with the Reston Documents, in consideration of his services as such, shall be indemnified by the Association (except for gross negligence or willful misconduct) to the extent and in the cases permitted by law against expenses and liabilities reasonably incurred in connection with the defense of any action, suit or proceeding, civil or criminal, to which he may be a party by reason of being or having been a Director or Officer of the Association or member of an entity or committee or of the DRB. The foregoing right of

indemnification shall not be exclusive of any other rights to which such person may be entitled by law, agreement, vote of the Members, or otherwise.

**Section XI.4. Compensation of Directors and Officers.**   Except for the CEO and Assistant Secretary, Directors shall not receive any compensation for their services as such, but they may, by resolution of the Board of Directors, be reimbursed for expenses related to such service or to service as an Officer or Director of the Association.

## Article XII Amendments

These Bylaws may be amended by a two-thirds vote of the Board of Directors at a meeting in which a quorum is present.   Amendments shall become effective upon adoption.

## Article XIII Seal

The corporate seal of the Association shall be in circular form and shall bear the name of the Association, its year of incorporation, and such other language as is required by the Code of Virginia.

**IN WITNESS WHEREOF,** the Board of Directors has caused these Amended Bylaws of Reston Association to be executed in its name on behalf of Reston Association following the amendment and adoption of these Bylaws pursuant to he required voting and approval of the Members.

RESTON ASSOICTION

BY:    Jennifer Blackwell
       President

ATTEST:    Mark Watts
           Secretary

COMMONWEALTH OF VIRGINIA COUNTY OF FAIRFAX, to-wit:

I, the undersigned, a Notary Public in and for the jurisdiction aforesaid, whose commission expires on the 26th day of April, 2006, do hereby certify that Jennifer Blackwell, President of RESTON ASSOCIATION, whose name is signed to the foregoing Amended Bylaws of Reston Association, bearing date on the 26th day of, April, 2006 this day acknowledged the same before me in my jurisdiction afore said.

Catherine Lucas Fulkerson
Notary Public