IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ALICE D. HILL, *on behalf of herself and all similarly situated individuals*,<br><br>Plaintiff,<br><br>vs.<br><br>CHADWICK, WASHINGTON, MORIARTY, ELMORE & BUNN, P.C.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:12-cv-671-JCC-JFA<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Chadwick, Washington, Moriarty, Elmore & Bunn, P.C. ("Chadwick Washington" or "Defendant"), by counsel, respectfully submits this Memorandum in Support of its Motion to Dismiss Plaintiffs' Class Action Complaint for Lack of Subject Matter Jurisdiction.

### Preliminary Statement

In her Class Complaint, Plaintiff alleges the Defendant violated her federal rights under the Fair Debt Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., by making manifold misrepresentations in state lawsuits and garnishment proceedings later brought to enforce judgments entered in those lawsuits. The Rooker-Feldman doctrine divests this Court of jurisdiction to entertain claims based on injuries caused by and through state court judgments. Thus, Plaintiff's claims based on injuries she purportedly suffered as a result of the state court judgments and the later garnishment proceedings should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

**Statement of Facts**

1.      **The Reston Association's Covenants and Resolution.**

Alice D. Hill ("Ms. Hill" or "Plaintiff") is a property owner and member of the Reston Association ("Reston Association" or "Association").  The Reston Association is a property owners' Association as defined by the Virginia Property Owners' Association Act, Title 55, Chapter 26, of the Virginia Code.  (See Am. Bylaws of Reston Assoc. Art. I § 1.2; Def.'s Ex. 1.) As a member of the Reston Association, Ms. Hill was bound by certain covenants recorded in the Fairfax County land records that required her to pay property assessments to the Association on an annual basis.  (See The First Amendment to the Deed of Amendment to the Deeds of Dedication of Reston (hereinafter "Covenants"), Art. V, § V.5; Def.'s Ex. 2 at 22.)  The Covenants further provide that:

> The Association may charge an owner of any portion of the Property: (i) a late fee on an overdue Assessment not to exceed ten percent of the Assessment; (ii) the costs, including attorney's fees and court costs, for collection of Assessments and of enforcing any of the provisions of this Deed; and (iii) interest on overdue sums, up to the maximum rate permitted by law.  Any such charges shall be a personal obligation of the owner of any portion of the Property and shall be added to and become a part of the lienable Assessment on the Lot of portion of the Property.  In addition, such charges may be awarded by a court as part of its judgment in any proceeding in law or equity.

(Id. at 24.)

An Assessment & Finance Resolution ("Resolution") adopted by the Association on June 22, 2006, provides the annual assessment rate and the procedures for collecting the assessment. (See Compl. Ex. C.)  Under the Resolution, any late assessment would "automatically incur a late payment charge . . . of ten percent (10%) of the Annual Assessment installment amount." (Id.; Resolution 4(a).)  The Resolution also provides that "[a]ll past due account balances will incur finance charges at an annual rate of twelve percent (12%) . . . ."  (Id.)  After an account has

remained delinquent for a period greater than ten days, under the Resolution's terms, the

Association "will proceed with collection."  (Id. at 4; Resolution 6(c)(i).)

To collect delinquent assessments, the Resolution provides that the "Reston Association

may record a memorandum of lien and/or seek a judgment on the Owner's personal obligation to

pay the Assessment, Maintenance Assessment, and other charges."  (Id.; Resolution 6(c)(ii).)

The "Reston Association may also pursue post-judgment enforcement action and, in appropriate

cases, as determined by the Board of Directors, foreclose upon a lien."  (Id.)  Either through its

attorney or staff, the Association "may record a memorandum of lien at any time they believe

that such recordation would protect Reston Association's rights or enhance its collection efforts."

(Id.; Resolution 6(c)(iii).)  The Association will charge the following to any account for which a

lien is recorded: (1) the costs of collection, including court costs and administrative costs,

associated with "the preparation, recordation, and execution of the lien"; (2) the Clerk of  Court's

recordation fees and costs associated with providing the notice of the lien to the owner; (3) costs

associated with the preparation, execution, and recordation of a lien release; (4) the Clerk of

Court's fees for recording the lien release; and (4) attorney's fees incurred by the Association as

a result of these collection efforts.  (Id.)

The Resolution also provides that "in addition to or instead of recording a lien . . . the

Association may authorize [its] attorney to pursue obtaining [sic.] a personal judgment against

the Owner for any outstanding obligations to the Reston Association."  (Id.; Resolution 6(c)(iv).)

And consistent with the Owner's recorded Covenants, "[t]he delinquent Owner's account shall

also be assessed an amount equal to the attorney's fees incurred by [the Association] as a result

of these collection efforts."  (Id.)

2.      **The Association Obtains Default Judgments and Initiates Garnishment Actions Against Ms. Hill.**

After Ms. Hill became delinquent, the Reston Association referred her account to Chadwick Washington to commence collection efforts.  On June 17, 2009, Chadwick Washington filed a warrant-in-debt action against Ms. Hill in Fairfax County General District Court.  (Def.'s Ex. 3.)[1]  Ms. Hill failed to make an appearance on the return date to contest the allegations, so, on August 17, 2009, the court entered default judgment against her.  (Compl. ¶ 13.)  The amounts awarded were $1,631.30, plus 6% interest from June 9, 2009 until paid, costs of $65.00, and $525 in attorney's fees.  (Def.'s Ex. 4.)  To enforce its judgment, Chadwick Washington initiated a garnishment proceeding on July 13, 2011 by completing and filing in the Fairfax County General District Court the standard form DC-450 entitled "Suggestion for Summons in Garnishment" provided on the Virginia Judicial System website.  (See Def.'s Ex. 5.)[2]  The form, as modeled in accordance with Va. Code § 8.01-512.3, provides a line for entry of a claim of "Garnishment Costs."  On this line, Chadwick Washington recorded its claim of $294 in garnishment costs.  Chadwick Washington filed a subsequent garnishment action to satisfy the judgment on March 21, 2012, again using the DC-450 form.  (Def.'s Ex. 6.)

---

[1] The court may take judicial notice of Defendant's Exhibit 3 (and other exhibits attached to this Motion) because the June 17, 2009 lawsuit, although not attached, is explicitly referred to and relied upon in the Complaint.  See Fed. R. Civ. P. 10(c); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (court may review "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (citation omitted); see also Am. Chiropractic v. Trigon Healthcare, 367 F.3d 212, 234 (4th Cir. 2004) (when a defendant attaches a document to its motion to dismiss, "a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.").

[2] The form can be found at the following web address:
http://www.courts.state.va.us/forms/district/dc450.pdf (last visited Aug. 22, 2012).

On October 6, 2011, Chadwick Washington filed another warrant-in-debt action in

Fairfax General District Court.  (Def.'s Ex. 7.)  Again, Ms. Hill did not appear to defend against

the allegations, and the court, on December 6, 2011, entered a default judgment against her.

(Def.'s Ex. 8.)  The judgment was for $1,144.00, plus interest at the rate of 12% from October

29, 2009 until paid, $58.00 in costs, and attorney's fees equal to 20% of the judgment amount.

(Id.)  To date, Chadwick Washington has filed no garnishment actions to collect payment of the

December 2011 default judgment.

### 3.  Chadwick Washington Sends Ms. Hill Two Collection Letters in 2012.

As of March 2012, Ms. Hill had neither satisfied the outstanding default judgments

entered against her nor paid additional home owner assessments that had come due.  So, on

March 26, 2012, Chadwick Washington mailed her a letter with a Detail Ledger Report

("Ledger") of her account enclosed.  (Compl. Ex. A; Mar. 26, 2012 Letter.)  The letter stated that

as of that date Ms. Hill owed the Association a total balance of $4,988.36; an amount that

included attorney's fees, interest, and costs.  (Id. at 1.)   The Ledger dates back to January 1,

2005, and clearly shows how payments are apportioned and interest calculated.  It reveals that

interest was never added against sums owed for late fees, attorney's fees, or court costs.  (Id. at

2.)

On May 18, 2012, Chadwick Washington mailed Ms. Hill another letter.  This one stating

that she had failed to pay her 2012 assessment; therefore, in addition to the sums she previously

owed, she owed an additional $565.00 (the amount of the annual assessment), $56.00 in late fees,

$225.00 as a lien covenant charge, $768.93 in attorneys' fees and costs secured by liens, and

$10.00 for "[c]ost of docketing judgment."  (Compl. Ex. B; May 18, 2012 Letter.)

## C.      The Class Action Complaint.

On June 19 2012, Miss Hill filed a Complaint asserting claims under the FDCPA on behalf of herself and all similarly situated individuals.  The Complaint alleged Chadwick Washington had violated the FDCPA by sending letters, filing lawsuits, and commencing garnishment actions that contained or were based on false and deceptive statements and allegations.  (Compl. ¶11.)  Specifically, the Complaint alleges that Chadwick Washington:

a) misrepresented that the Plaintiffs were liable for attorneys' fees that had not been awarded by a court in violation of the Virginia Condominium Act ("VCA"), Va. Code § 55-79.84(E);

b) misrepresented the amount of interest due because it purported to assess interest on late fees, attorneys' fees, and garnishment costs without legal authority;

c) misrepresented the interest rate because it claimed an amount of interest (12%) that was beyond what was permitted under § 55-79.84(E) of the VCA;

d) misrepresented the computation of interest because it computed the amount of interest due prior to crediting payments made by Ms. Hill;

e) misrepresented that Ms. Hill was liable for late fees that exceeded $50 per month in violation of § 55-79.80:2 of the VCA;

f) misrepresented that it could file a memorandum of lien against Ms. Hill's property to secure debts other than late assessments in violation of § 55-79.84(A) ; and

g) misrepresented in the filing of garnishment proceedings that Ms. Hill was liable for garnishment costs.

Based on her individualized allegations, Ms. Hill proposes a class and two subclasses defined as follows:

- [Class:]  All natural persons who received correspondence from the Defendant and/or was sued or garnished by a client represented by the Defendant in a General District Court located within the Eastern District of Virginia, Alexandria Division, where the Defendant demanded payments of sums from the consumers that included either interest over 6%, interest on more than the principal balance, interest without crediting payments, interest that wasn't due, attorneys' fees that had not been awarded by a court, garnishment costs, late fees above $50.00, or other sums that exceed the amount authorized by Virginia law:

- 6 -

- Subclass 1:  All natural persons who received correspondence from the Defendant demanding payment or was sued or garnished by a client represented by the Defendant in a General District Court located within the Eastern District of Virginia, Alexandria Division, for which the consumer ultimately paid more than what was actually due and/or awarded by the court in the underlying judgment within the past two years from the date of the filing of this Complaint ("the actual damages subclass");

- Subclass 2:  All natural persons who received correspondence from the Defendant demanding payment or was sued or garnished by a client represented by the Defendant in a General District Court located within the Eastern District of Virginia, Alexandria Division, who received a demand for payment, suffered a judgment or garnishment in favor of the Defendant's client, and for which the consumer did not ultimately pay an amount in excess of that which was actually due and/or which was awarded by the Court within the past one year from the date of filing of this Complaint ("the statutory damages subclass").

Based on these allegations, the Complaint asserts that Chadwick Washington violated three provisions of the FDCPA and divides the violations in three counts:  Count I alleges violations of 15 U.S.C. § 1692d(1), Count II alleges violations of 1692e, and Count III alleges violations of 1692f.

## ARGUMENT

"Federal courts are courts of limited jurisdiction."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Consequently, when it appears a federal court lacks jurisdiction of the subject matter of the case, "the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3). Federal Rule of Civil Procedure 12(b)(1), provides the vehicle for a party to challenge jurisdiction before the district court.

When deciding a motion to dismiss under 12(b)(1), a court "may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'"  Virginia v. United States, 926 F. Supp. 537, 540–41 (E.D. Va. 1995) (quoting Capitol Leasing Co. v. FDIC, 999 F.2d 188,

191 (7th Cir. 1993)).  The court can therefore consider evidence outside the pleadings without

converting the proceeding to one for summary judgment.  See Velasco v. Gov't of Indonesia,

370 F.3d 392, 398 (4th Cir. 2004).  The plaintiff bears the burden of proving subject matter

jurisdiction.  McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); see also

Johnson v. Portfolio Recovery Assocs., 682 F. Supp. 2d 560, 566 (E.D. Va. 2009) ("Having filed

this suit and thereby seeking to invoke the jurisdiction of the Court, Plaintiff bears the burden of

proving that this Court has subject matter jurisdiction.").

        Where a federal lawsuit follows state litigation, and enforcement actions deriving from

that litigation, the federal lawsuit is often prohibited by the Rooker-Feldman doctrine.  The

Rooker-Feldman doctrine is the namesake of two Supreme Court decisions: Rooker v. Fidelity

Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S.

462 (1983).  In Rooker, unsuccessful state court litigants repaired to the federal district court

seeking relief after entry of a state court judgment.  Claiming that the state court's judgment was

in contravention of the Constitution, they asked the district court to declare the state judgment

"null and void."  Id. at 414-15.  The district court dismissed the matter for lack of subject matter

jurisdiction and the Supreme Court affirmed.  In so doing, the Court explained that even

assuming the state court's decision was contrary to the Constitution and the Court's

jurisprudence, "that did not make the judgment void, but merely left it open to reversal or

modification in an appropriate and timely appellate proceeding."  Id. at 415.  Federal district

courts, the Rooker Court recognized, lacked the requisite appellate authority for their jurisdiction

was "strictly original."  Id. at 416.  By enacting 28 U.S.C. § 1257, Congress vested only the

Supreme Court with appellate jurisdiction "to reverse or modify" state court judgments.  Id.

Sixty years later, the Court had occasion to further elucidate the jurisdictional dimensions of its Rooker ruling in Feldman.  In the case, two plaintiffs, neither of whom graduated from a law school accredited by the American Bar Association, asked the District of Columbia Court of Appeals to waive its requirement that D.C. bar applicants graduate from an accredited law school to take the bar examination. The D.C. court denied the petitions, prompting the parties to file suit in federal district court.  Id. at 465–73.  The case ultimately wended its way to the Supreme Court and, consistent with its Rooker decision, the Court dismissed the action reaffirming that district courts lack the authority to review state court judgments or claims that are "inextricably intertwined" with those judgments.  Feldman, 460 U.S. at 476, 486.  Hence, "to the extent that [the plaintiffs] sought review in the [district court] for the denial of their petitions for waiver, the [district court] lacked subject-matter jurisdiction over their complaints."  Id. at 482.

The Supreme Court revisited the doctrine recently in Exxon Mobil Corp. v. Saudi Basic Industries, 544 U.S. 280, 284 (2005), and there defined the doctrine as applying to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Lance v. Dennis, 546 U.S. 459, 464 (2006) (citing Exxon Mobil, 544 U.S. at 284).  The Court explained, however, that the doctrine does not preclude a losing state court litigant from presenting a wholly independent claim to a district court.  Exxon Mobil, 544 U.S. at 293.  A claim is "independent" for purposes of Rooker-Feldman if the alleged harm was not caused by a state court judgment.  Thus, the relevant inquiry, as explained by the Fourth Circuit (and other courts of appeals), is "whether the state-court loser who files suit in federal district court seeks redress for an injury *caused* by the state-court decision itself."  Davani v. Va. DOT, 434 F.3d 712, 718 (4th Cir. 2006) (emphasis added); see also Washington v. Wilmore, 407 F.3d

274, 280 (4th Cir. 2005) (holding, post-<u>Exxon</u>, that the <u>Rooker-Feldman</u> doctrine did not apply to constitutional claim brought by convicted defendant because his "claim of injury rests not on the state court judgment itself, but rather on the alleged violation of his constitutional rights").

Post-<u>Exxon</u> cases applying <u>Rooker-Feldman</u> offer guidance as to the types of cases that are not jurisdictionally barred.  A federal case that parallels a pending state court action is not barred by the doctrine.  <u>See Exxon</u>, 544 U.S. at 292.  Nor is a federal case raising a claim arising under federal anti-discrimination laws barred because the plaintiff lost an administrative appeal against his state-agency employer in the state appellate courts.  <u>Davani</u>, 434 F.3d at 719.  A facial challenge to a state statute or rule that seeks prospective relief regarding its application in a future case is also not barred by <u>Rooker-Feldman</u>.  <u>See Fieger v. Ferry</u>, 471 F.3d 637, 646 (6th Cir. 2006).

At bottom, <u>Rooker-Feldman</u> precludes a losing party in state court "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." <u>Johnson v. De Grandy</u>, 512 U.S. 997, 1005–06 (1994).  <u>Rooker-Feldman</u> applies "no matter how erroneous or unconstitutional the state court judgment may be."  <u>Kelley v. Med-1 Solutions, LLC</u>, 548 F.3d 600, 603 (7th Cir. 2008).  And it extends to both questions directly involved in the state court action and "claims that are inextricably intertwined" with those questions.  <u>Plyler v. Moore</u>, 129 F.3d 728, 731 (4th Cir. 1997). (internal quotation marks omitted).  <u>Rooker-Feldman</u>'s "inextricably intertwined" language does not devise an additional legal test or expand the doctrine beyond its original contours, "but merely states a conclusion: if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his

federal claim is, by definition, 'inextricably intertwined' with the state-court decision." <u>Davani</u>, 434 F.3d 712, 719.

"It is important to note that the <u>Rooker-Feldman</u> doctrine applies . . . even if the state-court loser did not argue to the state court the basis of recovery that he asserts in the federal district court." <u>Davani</u>, 434 F.3d at 719.  Thus, the label attached to the federal court action is, rarely, if ever, important, because a plaintiff asking a federal court to review issues that were or should have been addressed in state court is unlikely to say so.  <u>See</u> <u>Friedman's, Inc. v. Dunlap</u>, 290 F.3d 191, 196 (4th Cir. 2002).

A.     **This Court Has No Jurisdiction to Hear Ms. Hill's Claims for Harms Caused By the August 17, 2009 and October 7, 2011 Judgments.**

Ms. Hill claims injuries caused by Chadwick Washington's misrepresentations of an entitlement to attorney's fees, and misrepresentations for judgment interest in excess of 6%, and late fees in excess of $50.00.  (Compl. ¶ 11.)  These alleged misrepresentations were made both in letters mailed to Ms. Hill, (<u>Id.</u> ¶10), and in two lawsuits filed by Chadwick Washington on June 23, 2009 and October 7, 2011, (<u>Id.</u> ¶¶ 13, 14).  The alleged misrepresentations made in the two lawsuits are claims of injuries inextricably intertwined with the default judgments entered against Ms. Hill on August 17, 2009 and October 7, 2011.  The <u>Rooker-Feldman</u> doctrine therefore divests this Court of jurisdiction to consider those claims.  The Seventh Circuit's decision in <u>Kelley v. Med-1 Solutions, LLC</u>, is instructive on this point.

In <u>Kelley</u>, as here, the plaintiffs brought a class action claiming the defendant, a debt collection agency, violated the FDCPA by making demands for attorney's fees in numerous small claims actions in Indiana state court. Although the defendant obtained the fees it requested from the state court, plaintiffs alleged the defendant violated the FDCPA by "making false and misleading statements as to their entitlement to recover attorney['s] fees; and that they were

harmed by [the defendant's] deceptive demands." 548 F.3d at 602. Despite the plaintiffs' best

efforts to flout <u>Rooker-Feldman</u> by stating they were seeking only to "remedy defendants'

*deceptive representations* and requests related to attorney fees," the court saw through their

charade and ruled <u>Rooker-Feldman</u> precluded their lawsuit. The court explained that before a

party can obtain an award for attorneys' fees, it must "convince the state courts that they are

entitled to attorney fees in order to succeed in extracting" those fees. <u>Id.</u> at 603. The court

summed up:

> Because defendants needed to prevail in state court in order to capitalize on the
> alleged fraud, the FDCPA claims that plaintiffs bring ultimately require us to
> evaluate the state court judgments. We could not determine the defendants'
> representation and requests related to attorney fees violated the law without
> determining that the state court erred by issuing judgment granting the attorney
> fees.

<u>Id.</u> at 605.

The court in <u>Kelley</u> also found unpersuasive the plaintiffs' claim that <u>Rooker-Feldman</u>

should not apply because they would not have had a reasonable opportunity to raise their

FDCPA claims in the state court litigation. "While we recognize that small claims court was not

the preferred forum for plaintiffs to raise their specific federal claims, they were not precluded

from raising their claims in state court." <u>Id.</u> at 606.

The reasoning of <u>Kelley</u> applies to the instant case. Like in <u>Kelley,</u> Ms. Hill here argues

that Chadwick Washington made false representations of its entitlement to attorney's fees in

state court litigation. In addition, in this case, Plaintiffs argue Defendants violated the FDCPA

by filing lawsuits in which it demanded payment of interest at a rate greater than 6%, interest

calculated on a basis other than principal, and late fees greater than $50.00. All of these claims

are inextricably tied to state court litigation and, specifically, the judgments entered by the

Fairfax County General District Court. To declare that the state court judgments are based on

unlawful claims for attorney's fees, interest, and late fees would be to call into question the

validity of those judgments.  In essence, Ms. Hill is claiming that Chadwick Washington violated

the FDCPA by seeking exactly what the state court awarded—attorneys' fees, interest greater

than 6%, and late fees greater than $50.  These are the very types of claims the <u>Rooker-Feldman</u>

doctrine proscribes.

    To be sure, Ms. Hill could have appeared in general district court and contested the

validity of Chadwick Washington's claims for attorneys' fees, late fees, and interest, but she

chose to not do so.  Now that judgment has been entered against her, she cannot undermine the

validity of those judgments by framing her claims using the text of the FDCPA.

> **B.    Count III Should Be Dismissed Because this Court Has No Jurisdiction to
> Hear Ms. Hill's Claims for Harms Caused By Alleged Misrepresentations of
> Garnishment Costs and Count III.**

    15 U.S.C. § 1692d bars a debt collector from "any conduct the natural consequence of

which is to harass, oppress, or abuse any person in connection with the collection of a debt."

Subsection (1) specifically proscribes the"[t]he use or threat of use of violence or other criminal

means to harm the physical person, reputation, or property of any person."  In Count III, Ms. Hill

alleges Chadwick Washington violated 15 U.S.C. § 1692d(1) because its "attempts to garnish

amounts that were not awarded in the underlying judgment, or which were not otherwise proper

under Virginia law, constituted violations Virginia Code § 8.01-511, an offense classified as a

Class 1 misdemeanor."  (Compl. ¶¶ 36–37.)  These claims are necessarily barred by <u>Rooker-

Feldman</u>.

    According to Virginia Code § 8.01-511, after obtaining a judgment, a judgment creditor

can initiate a garnishment proceeding by filing with the clerk of court a garnishment summons

"prepared in the form prescribed by § 8.01-512.3."  Va. Code § 8.01-511.  The form outlined by

§ 8.01-512.3—and as memorialized in Form DC-450 found on the Virginia Judicial System website—expressly provides for a request of garnishment costs.  The summons is then issued by the clerk of court for service on the garnishee and the judgment debtor.  The clerk can issue the garnishment summons to the sheriff or another person eligible to issue service.  Id. § 8.01-511. As required under § 8.01-512.3, the garnishment summons must indicate a return date in which a hearing can be held on claims of the judgment debtor and objections of the garnishee.  See Virginia Code Ann. §§ 8.01-514 through -519; CRC, Ltd. v. Lloyd, 32 Va. Cir. 106, 108 (Va. Cir. Ct. 1993).  As this makes clear, Virginia law provides a legislative scheme through which a judgment creditor utilizes the judicial process to garnish a judgment debtor's property.  The garnishment process is therefore conducted under the supervision and imprimatur of the state court, and the state provides a judgment debtor an opportunity to be heard on any objections she might have.

Rooker-Feldman applies here because the doctrine does not permit a federal court to second-guess the propriety of a state judicial act.  Ms. Hill is effectively asking this Court to declare that a state court acted as an aider and abettor, if not a co-conspirator, of a  criminal act by issuing a garnishment that contained an alleged misrepresentation of an entitlement to garnishment costs.  Put another way, Ms. Hill essentially claims that Chadwick Washington violated the FDCPA by seeking exactly what the state court awarded—garnishment costs.  The state court determined that the amounts sought were, in fact legally due and Ms. Hill cannot avoid the Rooker-Feldman doctrine by framing her claims in terms of Defendants' attempts to obtain what the state court approved.  Because Count III is premised on the allegation that the garnishment proceedings were unlawful, and thus essentially seeks federal court review of a state court action, this Court should dismiss the Count under Rooker-Feldman.  See Johnson, 512 U.S.

at 1005–06 (stating <u>Rooker-Feldman</u> prevents "appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.").[3]

### <u>Conclusion</u>

In many respects, Ms. Hill is merely a state-court loser seeking redress under the guise of the FDCPA for injuries suffered because of state-court judgments rendered and garnishment proceedings commenced before she filed the instant Complaint.  <u>See</u> <u>Exxon Mobil</u>, 544 U.S. at 284.  She is thereby in essence seeking nothing more than appellate review of those state proceedings.  The <u>Rooker-Feldman</u> prevents this type of litigation.  Accordingly, this Court should dismiss all claims brought by Ms. Hill that rely on the state-court judgments and garnishment proceedings as a factual basis.  This includes, but is not limited to, Count III of the Complaint.  Defendant respectfully requests all such further relief as this Court deems proper.

---

[3] It is notable that the FDCPA does not bar a judgment creditor from taking steps to levy property, garnish wages, and file other proper collection tools.  <u>Parker v. Pressler & Pressler</u>, LLP, 650 F. Supp. 2d 326, 345–46 (D.N.J. 2009).  Chadwick Washington lawfully obtained a judgment and they are entitled to collect on it through means approved by Virginia courts.

Respectfully submitted,

CHADWICK, WASHINGTON, MORIARTY,
ELMORE & BUNN, P.C.

By: _____”/s/”_____
                    Joseph R. Pope

William D. Bayliss, Esquire (VSB No. 13741)
bbayliss@williamsmullen.com
Brendan D. O'Toole, Esq. (VSB # 71329)
botoole@williamsmullen.com
Joseph R. Pope, Esq. (VSB # 71371)
jpope@williamsmullen.com
Williams, Mullen, Clark & Dobbins, P.C.
200 South 10th Street
Richmond, VA 23219
Telephone:  (804) 420-6000
Facsimile:   (804) 420-6507
*Counsel for Defendant Chadwick, Washington, Moriarty, Elmore & Bunn, P.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of August, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

**Plaintiff**

**Alice D. Hill**                                   represented by   **Leonard Anthony Bennett**
*on behalf of herself and all similarly*                            Consumer Litigation Associates
*situated individuals*                                              763 J Clyde Morris Boulevard
                                                                    Suite 1A
                                                                    Newport News, VA 23601
                                                                    757-930-3660
                                                                    Fax: 757-930-3662
                                                                    Email: lenbennett@cox.net
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Andrew Joseph Guzzo**
                                                                    Surovell Isaacs Peterson & Levy PLC
                                                                    4010 University Drive
                                                                    Second Floor
                                                                    Fairfax, VA 22030

703-251-5400
Fax: 703-541-9205
Email: aguzzo@siplfirm.com
*ATTORNEY TO BE NOTICED*

**Kristi Cahoon Kelly**
Surovell Isaacs Petersen & Levy PLC
4010 University Dr
Suite 200
Fairfax, VA 22030
703-277-9774
Fax: 703-591-9285
Email: kkelly@siplfirm.com
*ATTORNEY TO BE NOTICED*

**Susan Mary Rotkis**
Consumer Litigation Associates
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
757-930-3660
Fax: (757) 930-3662
Email: srotkis@clalegal.com
*ATTORNEY TO BE NOTICED*

_____"/s/"_____
        Joseph R. Pope

William D. Bayliss, Esquire (VSB No. 13741)
bbayliss@williamsmullen.com
Brendan D. O'Toole, Esq. (VSB # 71329)
botoole@williamsmullen.com
Joseph R. Pope, Esq. (VSB # 71371)
jpope@williamsmullen.com
WILLIAMS, MULLEN, CLARK & DOBBINS, P.C.
Williams Mullen Center
200 South 10th Street, PO Box 1320
Richmond, VA 23218-1320
Telephone: 804.420.6000
Facsimile: 804.420.6507
*Counsel for Defendant Chadwick, Washington, Moriarty, Elmore & Bunn, P.C.*

18860816_1